UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAINT-GOBAIN ABRASIVES, INC.,<br>　　Plaintiff,<br>v.<br>KOHLER CO.,<br>　　Defendant.<br><br>KOHLER CO.,<br>　　Counterclaim Plaintiff,<br>v.<br>SAINT-GOBAIN ABRASIVES, INC.,<br>　　Counterclaim Defendant. | CIVIL ACTION No. 04-40199-FDS |

## ANSWER TO COMPLAINT AND COUNTERCLAIM

1. Defendant Kohler Co. ("Kohler") admits that Saint-Gobain is a manufacturer of Bear-Tex abrasive products and has insufficient information either to admit or deny the remaining allegations in paragraph 1 of the Complaint.

2. Defendant Kohler admits the allegations in paragraph 2 of the Complaint.

3. The allegations in paragraph 3 of the Complaint is a statement of law, and not an allegation of fact, and thus requires no response.

4. Defendant Kohler states that the August 21, 2003 agreement speaks for itself and that as a result, no further answer is required to paragraph 4 of the Complaint. Further answering, defendant Kohler states that Saint-Gobain knew or should have known that Kohler corporate policy frowns upon and otherwise discourages single source supplier agreements, that Steve Frank lacked authority to enter into said agreement and that Saint-Gobain knew or should have known that fact.

32077.1

5. Defendant Kohler admits it accepted relates, but denies the remaining allegations in paragraph 5 of the Complaint.

6. Defendant Kohler denies the allegations contained in Paragraph 6 of the Plaintiff's Complaint.

7. Defendant Kohler admits it has refused to purchase all Saint-Gobain's Bear-Tex consignment inventory, back-up inventory, and work-in-process of products or materials designated for shipment to Kohler. Defendant Kohler denies the remaining allegations in paragraph 7 of the Complaint.

8. Defendant Kohler denies the allegations in paragraph 8 of the Complaint.

**WHEREFORE,** the Defendant respectfully requests that this Honorable Court dismiss the Plaintiff's Complaint and enter judgment in its favor.

## AFFIRMATIVE DEFENSES

1. Defendant Kohler has no obligations under the agreement because plaintiff SGA failed to comply with the "Quality" provision contained in both the Searcy Addendum and the Reynosa Addendum. Specifically, the agreement provides that "[t]his single source agreement is contingent upon SGA maintaining acceptable product quality and performance." SGA failed to fulfill this contingency.

2. If the Plaintiff suffered damages, as alleged, such damages were caused by a person for whose conduct the Defendant was not, and is not, legally responsible.

3. If the Plaintiff was injured or damaged as alleged, the Plaintiff assumed the risk of such injury or damage.

4. To the extent that Defendant Kohler had any obligations to the Plaintiff, such obligations have been fully, completely, and properly performed in every respect.

32077.1

5.  To the extent the Plaintiff suffered any damages, the damages were the result of a superseding and/or intervening cause for which the Defendant Kohler was not responsible.

6.  An individual who lacked authority to act on behalf of Defendant executed the alleged contract or agreement, upon which the Plaintiff relies, and Plaintiff was fully aware of that fact.

7.  The Plaintiff is estopped by its own conduct from recovering damages against the Defendant Kohler.

8.  The Plaintiff is prevented from recovering damages against the Defendant Kohler under the clean hands doctrine.

## COUNTERCLAIM

### PARTIES

1.  Counterclaim Plaintiff Kohler, Co. ("Counterclaim Plaintiff" or "Kohler") is a Wisconsin corporation with a place of business in Searcy, Arkansas.

2.  Counterclaim Defendant Saint-Gobain Abrasives, Inc. ("Counterclaim Defendant" or "SGA") is a corporation incorporated in a state other than Wisconsin and with a usual place of business in Worcester, Massachusetts.

### JURISDICTION

3.  The matter in controversy is between citizens of different states and exceeds, exclusive of interest and costs, $75,000. Thus, this court has jurisdiction to hear this counterclaim pursuant to 28 U.S.C. § 1332.

4.  This counterclaim is brought in part pursuant to the declaratory judgment statute, 28 U.S.C. § 2201.

32077.1

## FACTS

5.  On multiple occasions between 1999 and 2003, representatives of SGA approached officials at Kohler regarding the concept of a national contract between Kohler and SGA for the purchase of abrasives for use at various Kohler plant locations.

6.  On each occasion between 1999 and 2003, Kohler rejected SGA's offers to serve as the sole supplier of abrasive products used by Kohler. SGA was told that "sole supplier" agreements entered into by Kohler are very limited and frowned up. SGA proposed agreements to Kohler that contained "sole supplier" language. Kohler refused to enter into those agreements, which were revised to strike that language.

7.  A course of conduct between representatives of SGA and Kohler clearly established that only individuals from Kohler corporate headquarters in Wisconsin had the authority to execute supplier contracts binding Kohler and its facilities.

8.  Kohler executed an agreement with SGA on or about June 23, 2003, whereby Kohler agreed to appoint SGA as an impact supplier of certain abrasives at certain facilities owned and/or operated by Kohler, and SGA agreed to work as an impact supplier, improve productivity at designated Kohler facilities, upgrade specification at designated Kohler facilities, improve performance/quality at designated Kohler facilities, and reduce overall costs at designated Kohler facilities ("Universal Agreement"). Ultimately, use of SGA products resulted in increased costs to Kohler relating to poor quality, yields and equipment maintenance.

9.  The terms of the Universal Agreement involve all SGA abrasive products from Norton, Cora, and Winter, including: bonded abrasives, coated abrasives, Bear-Tex non-woven nylon products, superabrasive products, plated diamond products, and CBN products. However, the terms of the Universal Agreement do not require Kohler to purchase any specific amount of SGA products either during the term of the Universal Agreement or subsequent to

the termination of the Universal Agreement. Moreover, said agreement is <u>not</u> a sole supplier agreement.

10. As a result of the Universal Agreement, SGA provided reduced pricing on its products to Kohler, and in exchange Kohler designated SGA as one of its many multiple strategic suppliers.

11. Appendix A to the Universal Agreement unequivocally indicates that all of Kohler's facilities, including those in Searcy, Arkansas and Reynosa, Mexico, were covered under the terms of the Universal Agreement.

12. In an effort to bypass the Kohler's aversion against and reluctance to enter into sole supplier agreements, at some point during the summer of 2003, representatives of SGA approached representatives of Kohler's Searcy, Arkansas facility, and offered an addendum to the Universal Agreement ("Searcy Addendum"), which covered all Bear-Tex (non-woven nylon) abrasive products.

13. The Searcy Addendum was not forwarded to those corporate officials at Kohler, who possessed the authority to execute agreements that could effectively bind Kohler, for complete and proper review.

14. On or about August 21, 2003, representatives of SGA, while aware of the terms of the Universal Agreement and Kohler's aversion to "sole supplier" agreements, wrongfully induced Kohler personnel at the Searcy, Arkansas facility to enter into the Searcy Addendum. The Searcy Addendum designates SGA as the single source supplier of all Bear-Tex (non-woven nylon) abrasive products between August 1, 2003 and July 31, 2006 for Kohler's Searcy, Arkansas facility. Said addendum was signed as a result of a mistake of fact, which SGA was aware of.

15. The Searcy Addendum was never proposed to, or authorized by, those corporate officials at Kohler who possessed the authority to execute agreements that could effectively bind Kohler to "sole supplier" agreements.

16. Subsequently, at some point prior to September 1, 2003, representatives of SGA approached representatives of Kohler's Reynosa, Mexico facility, and offered an addendum to the Universal Agreement ("Reynosa Addendum"), which covered all abrasives, including coated abrasives.

17. The Reynosa Addendum was not forwarded to those corporate officials at Kohler, who possessed the authority to execute agreements that could effectively bind Kohler, for complete and proper review.

18. At some point on or about September 1, 2003 representatives of SGA, while aware of the terms of the Universal Agreement, wrongfully induced Kohler personnel at the Reynosa, Mexico facility to enter into the Reynosa Addendum.

19. The Reynosa Addendum designates SGA as the single source supplier of all abrasive products between September 1, 2003 and August 31, 2006 for Kohler's Reynosa, Mexico facility.

## COUNT I
## BREACH OF CONTRACT

20. Kohler realleges and incorporates herein the allegations contained in paragraphs 1-19 of the Counterclaim.

21. The products recommended by SGA and supplied under the Searcy Addendum and the Reynosa Addendum have failed to meet acceptable quality and performance standards.

22. As a result of supplying substandard products which failed to perform and otherwise are not suitable for the intended job, SGA has breached the Searcy Addendum and the Reynosa Addendum, thereby causing damage to Kohler.

32077.1

## COUNT II
## BREACH OF EXPRESS WARRANTY

23. Kohler realleges and incorporates herein the allegations in paragraphs 1-19 of the Complaint.

24. In both the Searcy Addendum and Reynosa Addendum, SGA expressly warranted that it would maintain acceptable product quality and performance standards for its products.

25. SGA breached said express warranty by failing to maintain acceptable product quality and performance, thereby causing damage to Kohler.

## COUNT III
## BREACH OF WARRANTY FOR A PARTICULAR PURPOSE

26. Kohler realleges and incorporates herein the allegations in paragraphs 1-19 of the Counterclaim.

27. At the time the Searcy Addendum and Reynosa Addendum were executed, by prior dealings and by the circumstances of the transaction, SGA knew of the particular purpose for which the Bear-Tex belt products and other abrasive products were to be used. To its detriment, Kohler relied upon SGA's skill and judgment in selecting and supplying said products.

28. Said products supplied under the Searcy Addendum and Reynosa Addendum were unfit for the purposes for which they were intended, thereby causing damage to Kohler.

## COUNT IV
## BREACH OF IMPLIED WARRANTY

29. Kohler realleges and incorporates herein the allegations in paragraph 1-19 of the Counterclaim.

30. The products supplied under the Searcy Addendum and the Reynosa Addendum are not fit for the ordinary purposes for which said goods are used and do not pass without objection in the trade.

7

32077.1

31. As a result, SGA breached the implied warranty of merchantability, thereby causing damage to Kohler.

## COUNT V – FRAUD/DECEIT

32. Kohler realleges and incorporates herein the allegations in paragraphs 1-19 of the Counterclaim.

33. Based upon prior dealings, including, but not limited to, the negotiations surrounding the Universal Agreement, SGA knew or had reason to know that the Kohler personnel at the Searcy, Arkansas and Reynosa, Mexico facilities lacked authority to enter into sole supplier agreements. SGA also knew that Kohler company policy frowns upon sole supplier agreements and that said agreements are rare within the company.

34. Despite this knowledge, SGA wrongfully induced Kohler personnel at the Searcy, Arkansas and Reynosa, Mexico facilities to enter into the sole supplier agreements, knowing full well that said personnel lacked authority to enter into said agreements and knowing full well that Kohler frowns upon "sole supplier" agreements.

35. Said behavior by SGA constituted fraud and/or deceit.

## COUNT VI
## DECLARATORY JUDGMENT

36. Kohler realleges and incorporates herein the allegations in paragraphs 1-35 of the Counterclaim.

37. Kohler's position is that the personnel at the Searcy, Arkansas and Reynosa, Mexico facilities who signed the Searcy and Reynosa Addendum's lacked authority to do so and that SGA knew or should have known that fact. Kohler further maintains that as a result, the Searcy and Reynosa Addendums are void and unenforceable. SGA, on the other hand, maintains that the contracts are enforceable. Moreover, with respect to the Searcy Addendum, SGA maintains that under that contract's "Term and Termination" provision, Kohler is

obligated to purchase all SGA Bear-Tex consignment inventory, back-up inventory and work in process of products or materials designated for shipment to Kohler. Kohler disputes that it has any such obligation.

38. An actual controversy exists between Kohler, in the one hand, and SGA, on the other, regarding whether the Searcy and SGA Addendums are in force and effect and whether Kohler is obligated to purchase SGA Bear-Tex product under the "Term and Termination" provision.

## COUNT VII
## BREACH OF THE IMPLIED WARRANTY OF GOOD FAITH AND FAIR DEALING

39. Kohler realleges and incorporates all allegations contained in paragraphs 1-19 of the Counterclaim.

40. At all times pertinent hereto, SGA had an affirmative duty to act in accordance with the implied covenant of good faith and fair dealing appurtenant to the Universal Agreement.

41. This duty required SGA not to do anything that would have the effect of circumventing the terms of the Universal Agreement that designated SGA as an impact supplier of abrasives for Kohler without providing any exclusivity rights.

42. Notwithstanding such obligations and duties, SGA breached the covenant of good faith and fair dealing with respect to the Universal Agreement by actively conducting negotiations to grant SGA exclusive supplier rights to Kohler facilities in Searcy, Arkansas and Reynosa, Mexico, with Kohler officials that SGA knew lacked the authority to execute binding contractual agreements on behalf of Kohler.

43. Following the execution of the Searcy Addendum and Reynosa Addendum, Kohler has expressly advised SGA that they never authorized Kohler personnel at the Searcy,

Arkansas or Reynosa, Mexico facilities to execute binding agreements with SGA, nor wanted any agreement with SGA concerning the purchase of SGA abrasive products other than the Universal Agreement.

**WHEREFORE,** Kohler asks this Court to grant the following relief:

1. Declare and adjudge that the Searcy Addendum and the Reynosa Addendum are void ab initio and that Kohler has no obligations under said contracts.

2. Declare and adjudge that Kohler has no obligation to SGA under the "Term and Termination" provisions of the Searcy Addendum and the Reynosa Addendum.

3. Reform the Searcy Addendum and Reynosa Addendum to strike those portions of the Addendum that conflict with the Universal Agreement and to make it conform to Kohler company policy.

4. Award damages to Kohler in an amount that the Court deems just and meet.

5. Award any other relief that the Court deems just and meet.

By its attorneys,
KOHLER CO.

_____
George C. Rockas, BBO# 544009
Joseph M. Alden, BBO# 654124
Wilson, Elser, Moskowitz,
   Edelman & Dicker LLP
155 Federal Street, 5th Floor
Boston, MA 02110
(617) 422-5300

32077.1

## CERTIFICATE OF SERVICE

I, George C. Rockas, hereby certify that I have this 30 day of November 2004 served a copy of the above pleading upon all parties of record by e-mail and fax to:

Robert L. Hamer, Esq.
Michele P. Rosano, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477

_____
George C. Rockas

32077.1